William M. ALLEN, for himself and all other persons of the class who are similarly situated, Plaintiffs–Appellees,

v.

STATE of Oklahoma ex rel. BOARD OF TRUSTEES OF the OKLAHOMA UNIFORM RETIREMENT SYSTEM FOR JUSTICES AND JUDGES; Richard A. Ward, J.I.M. Caldwell, Gerald Grimes, J.L. Merrill, Hamp Baker, Leo Winters, and Robert Fulton, as Members of the Board of Trustees of the Oklahoma Uniform Retirement System for Justices and Judges, Defendants–Appellants.

No. 66522.

Supreme Court of Oklahoma.

Sept. 20, 1988.

Michael C. Turpen, Atty. Gen., Ned Bastow, Asst. Atty. Gen. Oklahoma City, for defendants-appellants.

Tom R. Cornish, and Thomas P. Goresen, Messrs. Edwards, Roberts & Propester, Oklahoma City, for plaintiffs-appellees.

OPALA, Justice.

The issues presented for decision are: [1] Do the terms of 72 O.S. 1981 § 67.13a,[1] which allowed members of the Oklahoma Uniform Retirement System for Justices and Judges [URSJJ] credit for military service, violate Art. 5, § 57, Okl.Const.,[2] because the title of the act is defective? [2] Did the trial court err in requiring that the retirement benefits of the class members who failed to apply for military service credit be recalculated from the date of each member's retirement? and [3] Is an appeal-related attorney's fee recoverable against the State? We answer all three questions in the negative.

The Legislature amended 72 O.S. 1971 § 67.13a (as last amended by Okl.Sess.L.

---

1. The terms of 72 O.S. 1981 § 67.13a provide in pertinent part:
 " * * * *War veterans,* as defined above, *shall receive maximum benefits* available for each year of creditable service, not to exceed five (5) years, *for active military service* for retirement benefits *in the retirement systems within the State of Oklahoma....* The provisions of this act shall include military retirees, whose retirement was based only on active service, that have been rated as having twenty percent (20%) or greater service-connected disability by the Veterans Administration or the Armed Forces of the United States...." [Emphasis added.]
 The 1987 amendments to § 67.13a did not affect the quoted language *supra.* See Okl.Sess.L. 1987, Ch. 206, § 85 and Ch. 236, § 43.

2. See *infra* note 13 for the text of Art. 5, § 57, Okl. Const.

1978, Ch. 1), effective *June 29, 1981*,[3] to allow military service credit for war veterans or disabled military retirees who are members of any state retirement system (including URSJJ).[4] The 1981 act was carried into the official 1981 decennial edition of the Oklahoma statutes [known as "Oklahoma Statutes 1981"] by the recompilation's adoption on *June 2, 1982*.[5] The Attorney General on November 16, 1981 opined that because the provisions added to § 67.13a were not clearly encompassed within the title of the 1981 act,[6] § 67.13 violated Art. 5, § 57 of the Oklahoma Constitution.[7]

Judge William M. Allen [claimant] requested on August 10, 1984 that he be given credit for active military service as provided by 72 O.S. 1981 § 67.13a. Relying on the November 16, 1981 Attorney General's opinion, the executive director of the Oklahoma Public Employees Retirement System [OPERS] denied the request. In an administrative hearing held later, the OPERS Board of Trustees [Board][8] decided that 72 O.S. 1981 § 67.13a violated Art. 5, § 57, Okl. Const. The claimant's application for military service credit was hence denied.

The claimant appealed from the Board's decision to the district court. He sought (a) reversal of the Board's decision, (b) a writ compelling the Board to allow credit for military service, (c) a declaration that § 67.13a is free from constitutional infirmity and (d) certification of his suit as a class action. The trial court certified as a class all the adversely affected judges and their survivors[9] but specifically excluded members of other state retirement systems; it gave summary judgment to the claimant, finding that 72 O.S. 1981 § 67.13a was a "valid and Constitutional expression of the Legislature's intent to award military service credit to those war veterans who are members of the Plaintiff class." The court rejected as meritless the Board's constitutional challenge that the statute was tainted by a defective title. The district court directed the Board to give military service credit to class members who retired on or after June 29, 1981—the operative date of the act in contest. The class was given a six-month period beginning with the date of judgment to apply for military service credit. The court declined to assess counsel fees against the Board; instead, it ordered that a counsel fee of $50,000, as well as costs, be paid from the pension funds the class members recovered in the judgment.[10]

The Board brings this appeal, asserting that (1) 72 O.S. 1981 § 67.13a is constitutionally infirm because the Act's title is

---

**3.** Okl.Sess.L.1981, Ch. 288, § 1.

**4.** The term "war veterans" is defined in 72 O.S. 1981 § 67.13a. Military retirees who are included within the scope of the statute are persons whose military service credit benefits are based only on active service and who have been rated as having twenty percent (20%) or greater service-connected disability by the Veterans Administration or the Armed Forces of the United States, provided the service-connected disability benefit shall have been established within five (5) years after separation from the military service.

**5.** See *infra* note 19 for the pertinent provisions of 75 O.S. Supp.1982 § 185, the act by which the legislature adopted the decennial recompilation known as Oklahoma Statutes 1981.

**6.** See *infra* note 14 for the title to the legislation which amended § 67.13a.

**7.** A.G.Op. 81–256.

**8.** See generally, 74 O.S. 1981 §§ 901 et seq. The OPERS Board is responsible for administering

the judges' retirement system. See 20 O.S. 1981 §§ 1101 et seq.

**9.** The trial court certified the following class: those judges and justices who (a) are "war veterans" (within the meaning of 72 O.S. 1981 § 67.13a); (b) have otherwise complied with 20 O.S. 1981 §§ 1101 et seq. (the URSJJ statutes) and (c) have retired on or after June 29, 1981, the effective date of the Act, and the surviving spouses of deceased members who qualify for retirement benefits with the exception of those members or surviving spouses who are otherwise entitled to receive maximum benefits.

**10.** The compensatory fee award ordered below to be paid from the fund recovered by the class members is not challenged on this appeal; we express no opinion about the applicability of the "equitable fund or trust fund doctrine" to the instant lawsuit. See *State ex rel. Burk v. City of Oklahoma City*, Okl., 598 P.2d 659, 660–663 [1979].

defective, and (2) if § 67.13a is constitutional, those who retired before September 20, 1984, the date the Board denied the claimant's application, should not be permitted to claim added benefits for military service credit for the period between their retirement and the date the claimant's application was denied. We affirm the trial court's judgment.

The claimant seeks to incorporate into the appellate record material not presented to the trial court.[11] After summary judgment a party cannot enlarge the appellate record by adding new facts or evidentiary material.[12] Because the material sought to be included was not presented to the trial court, it cannot now be incorporated for this court's consideration on appeal.

### I

### SECTION 67.13a IS FREE OF CONSTITUTIONAL INFIRMITY

The Board argues that 72 O.S. 1981 § 67.13a violates Art. 5, § 57, Okl. Const.,[13]

because the act's title did not embrace the subject of the amendment—the allowance of credit for prior military service in state retirement systems.[14]

Under the constitutional mandate of Art. 5, § 43, Okl. Const.,[15] the Legislature must revise Oklahoma laws every ten years. If the substance of the revision is not otherwise prohibited by the Constitution the revision will stand as authorized.[16] A statute's incorporation in a decennial compilation purges or cures any defect present in that enactment's title.[17] By relation back the incorporation gives the statute validity from the date of the original enactment in a flawed form.[18]

Section 67.13a's 1981 amendment in contest here became operative *June 29, 1981*. It was later incorporated into Oklahoma Statutes 1981 when that decennial recompilation was adopted by the Legisla-

---

11. The claimant wanted the record to be enlarged by the inclusion of a lawmaker's affidavit showing legislative intent.

12. *Frey v. Independence Fire and Cas. Co.*, Okl., 698 P.2d 17, 20 [1985] and *In re Estate of Whitlock v. Henningsen*, Okl., 754 P.2d 862, 863 [1988].

13. The terms of Art. 5, § 57, Okl. Const., provide:
"Every act of the Legislature shall embrace but one subject, *which shall be clearly expressed in its title*, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length; Provided, That if any subject be embraced or any act contrary to the provisions of this section, such act shall be void only as to so much of the laws as may not be expressed in the title thereof." [Emphasis added.]

14. The legislative act [H.B. 1175, Okl.Sess.L. 1981, Ch. 288, § 1], which amended 72 O.S. 1971 § 67.13a (as last amended by Okl.Sess.L. 1978, Ch. 1), is entitled:
"AN ACT RELATING TO SOLDIERS AND SAILORS; AMENDING 72 O.S. 1971, SEC-

TION 67.13a, AS LAST AMENDED BY SECTION 1, CHAPTER 1, O.S.L. 1978 (72 O.S. SUPP.1980, SECTION 67.13a); DEFINING WAR VETERANS; EXPANDING SUCH DEFINITION; AND DECLARING AN EMERGENCY."

15. The terms of Art. 5, § 43, Okl. Const., are:
"The Legislature *shall*, in the year nineteen hundred and nine *and each ten years thereafter*, make provision by law for revising, digesting, and promulgating the statutes of the State." [Emphasis added.]

16. See *Ex Parte Autry*, 58 Okl.Cr. 88, 50 P.2d 239, 241 [1935]; *Crowdis v. State*, 59 Okl.Cr. 297, 58 P.2d 154, 156 [1936]; *Hart v. State*, 59 Okl.Cr. 396, 60 P.2d 411, 412 [1936]; *Hines v. Harmon*, 178 Okl. 1, 61 P.2d 641, 644 [1936] and *Jamison v. Admiralty Zinc Co.*, 186 Okl. 13, 96 P.2d 26, 28 [1939].

17. See *Bernstein v. Connecticut Fire Insurance Company*, Okl., 315 P.2d 232, 233 [1957]; *Bandy v. R.H. Fulton and Company*, Okl., 312 P.2d 875, 879 [1957]; *Atchley v. Board of Barber Examiners of State*, 208 Okl. 453, 257 P.2d 302, 305 [1953] and *Atlas Life Ins. Co. v. Rose*, 196 Okl. 592, 166 P.2d 1011, 1014 [1946].

18. See cases cited in *supra* note 16.

ture on *June 2, 1982.*[19] The section's inclusion in the 1981 recompilation cured any defects in the title and operated as a continuation of the 1981 enactment rather than as a new enactment of 1982. In short, the 1982 inclusion of the 1981 act in the 1981 decennial recompilation purged it of the infirmity and the cure operated by relation back from the date of the original enactment.[20]

The Board alludes to legislative history of § 67.13a's passage and urges that it mandates the section's invalidation. Our attention is directed to various bills introduced over a six-year period—from 1979 to 1985—whose titles reveal that military service credit was to be added to URSJJ benefits. These bills, which were never enacted, are: (1) 1979—HB 1181 (to amend 20 O.S. 1971 § 1102A, a URSJJ statute, by allowing credit for service as a war veteran); (2) 1981—S.B. 121 (which would add "armed forces service to retirement credit" for workers' compensation judges); (3) 1982—HB 1572 (to amend 74 O.S. 1981 § 902 to provide credit for certain military service in retirement systems of the state, including the URSJJ); (4) 1983—SB 75 (relating to the URSJJ and providing credit

for certain military service) and (5) 1985—SB 4 (providing retirement credit for certain military service, by enacting 20 O.S. Supp.1985 § 1102C).[21]

 Bills that fall short of passage, much like the testimony of individual lawmakers, are never probative of legislative intent. A legislature's failure to express its will through enacted law constitutes its official silence. No intent may be divined from a lawmaking body's silence.[22] Equally unavailing here is the attempt to sap efficacy from § 67.13a by pointing to post–1978 efforts to pass identical legislation. Enacted law is neither repealed nor diminished in its force by the passage or rejection of an act that would be duplicative of a statute already "on the books".[23]

## II

## THE PROPER DATE FOR THE CALCULATION OF BENEFITS

The Board argues that if § 67.13a be constitutional, the class members who retired before the Board's September 20, 1984 denial of the claimant's application

---

**19.** The terms of 75 O.S.Supp.1982 § 185 provide in pertinent part:

"The *Oklahoma Statutes 1981,* compiled and indexed under the provisions of Sections 171 through 181 of Title 75 of the Oklahoma Statutes, and compiled under the supervision of the Justices of the Supreme Court of the State of Oklahoma and approved by them on February 18, 1982, said Oklahoma Statutes contained in four volumes, *are hereby adopted as the official Code and Revised Statutes of the State of Oklahoma* to be known as Oklahoma Statutes 1981. Provided, however, that *this section shall not be construed to repeal or in any way* affect or modify any special or local laws or any law making an appropriation or any law relating to any special election or validating act or any law affecting any bond issue or by which any bond issue may have been authorized, nor to *affect any pending proceedings or any existing rights or remedies,* nor the running of the statutes of limitations in force at the time of the approval of this section...." [Emphasis added.]

**20.** See cases cited in *supra* note 16.

**21.** Similar legislation failed of passage in 1987 and 1988. See HB 1190 (1987—vetoed by the Governor), *infra* note 23, and HB 1518 (1988).

**22.** *Brigance v. Velvet Dove Restaurant, Inc.,* Okl., 725 P.2d 300, 303 [1986] and *Parker v. Blackwell Zinc Company,* Okl., 325 P.2d 958, 960 [1958].

**23.** See *Nishikawa v. Dulles,* 356 U.S. 129, 135 n. 8, 78 S.Ct. 612, 616 n. 8, 2 L.Ed.2d 659 [1958], where the Court stated that a committee's failure to adopt an *unnecessary and superfluous* amendment was of little significance. Rejection of an amendment may occur because the bill already includes those provisions and the proposed amendment would have been surplusage. See *Mercy Hospital v. Rate Setting Com'n,* 381 Mass. 34, 407 N.E.2d 337, 342 [1980] and *Gilbertson v. McLean,* 341 P.2d 139, 145 [Ore.1959].

See e.g. HB 1190, § 18, p. 14 (passed by the Legislature in 1987 but vetoed by the Governor), *supra* note 21. This proposed amendment of the URSJJ sections, 20 O.S. 1981 §§ 1101 et seq., to allow credit for prior military service would have duplicated the retirement benefits to which URSJJ members were entitled under 72 O.S. 1981 § 67.13a.

but did not apply for military service credit should not be permitted to claim the added benefits for the period between their retirement and the date of the application's denial. The Board asserts that credit for prior service is only available after a written application is filed with the Board as required by 74 O.S. Supp.1986 § 913(1)(a).[24] If these statutory procedures are not enforced, the Board urges, the principle that administrative remedies must be exhausted before court jurisdiction over a claim may be invoked would be offended. We are not persuaded by the Board's argument.

■ As a general rule, exhaustion of administrative remedies is a prerequisite for resort to the courts, but remedies that are ineffective or unavailable need not be exhausted.[25] Once benefits to the claimant were denied, based on the Attorney General's November 16, 1981 opinion, there was no longer an effective or available administrative remedy for eligible URSJJ members to pursue to secure the inclusion of military service credit in their retirement pay. The claimant and the affected class then sought a declaration of § 67.13a's validity in the district court. The Administrative Procedures Act specifically authorizes a district court declaratory judgment suit[26] to test the validity of an agency rule.[27]

In contract law, one who prevents another from performing a promised duty cannot benefit from the act.[28] When time is of the essence, delay in a contract's performance is excused if caused by the party objecting to the delay.[29] Similarly, a debtor is never liable for postjudgment interest if its payment was prevented by the creditor's act; interest in that instance will stop by operation of law.[30] One cannot induce inactivity

---

**24.** The Board argues that because the URSJJ sections, 20 O.S. 1981 §§ 1101 et seq., do not provide any procedure for securing prior service credit, the statutes which govern procedure for OPERS members are applicable.

**25.** *Martin v. Harrah Independent School District,* Okl., 543 P.2d 1370, 1372 [1976]; *Lincoln Income Life Insurance Co. v. Wood,* Okl., 556 P.2d 602, 604 [1976] and *Mattoon v. City of Norman,* Okl., 617 P.2d 1347, 1350 [1980].

**26.** The terms of 75 O.S.Supp.1987 § 306(A) provide in pertinent part:
"The *validity* or applicability *of a rule* may be determined *in an action for declaratory judgment* in the district court of the county of the residence of the person seeking relief or, at the option of such person, in the county wherein the rule is sought to be applied ... *if* it is alleged *the rule, or its threatened application,* interferes with or *impairs,* or *threatens to interfere* with or impair, the legal rights or privileges of *the plaintiff."* [Emphasis added.]

**27.** An Attorney General's opinion is not a rule (*Grand River Dam Authority v. State,* Okl., 645 P.2d 1011, 1016 [1982] ) unless it is adopted by an agency. Thus, when the Board became governed by the November 16, 1981 Attorney General's opinion as its standard of legal conduct, the norm adopted and counseled by that opinion became in effect the Board's rule.
The terms of 75 O.S. 1981 § 301(2) provided:
" 'Rule' means any agency *statement* of *general applicability and future effect* that implements, *interprets or prescribes substantive law* or policy, or prescribes the procedure or practice requirements of the agency...." [Emphasis supplied.]
Section 301 was last amended by Okl.Sess.L. 1987, Ch. 207, § 11, and renumbered as 75 O.S. Supp.1987 § 250.3 (Okl.Sess.L.1987, Ch. 207, § 27.

**28.** See *King v. Board of Regents, Claremore Junior College,* Okl., 541 P.2d 836, 841 [1975] (party to a contract who prevents performance cannot require performance by the other party); *Sunray DX Oil Co. v. Great Lakes Carbon Corp.,* Okl., 476 P.2d 329, 344 [1970] (a party cannot act in a manner which will tend to cause the other party to default and benefit therefrom); *Seal v. Carroll,* Okl., 439 P.2d 185, 189 [1968] (contracting party cannot benefit from preventing performance by the other party] and *Chilton v. Oklahoma Tire & Supply Co.,* 180 Okl. 39, 67 P.2d 27, 29 [1937] (nonperformance of contract is excused when performance was prevented by the other party).

**29.** See *Hooper v. Commercial Lumber Company,* Okl., 341 P.2d 596, 598 [1959].

**30.** See *Smith v. Robinson,* Okl., 594 P.2d 364, 367 [1979] (interest was suspended by the landlord's refusal to accept tender for rent) and *Abraham v. Stewart Bros. Cotton Co.,* 165 Okl. 73, 24 P.2d 992, 997 [1933] (interest was suspended where the creditor's acts prevented payment of debt). The teaching of *Abraham, supra,* is that any person who is entitled to recover damages is entitled to recover interest from that day *except during such time as the debtor is prevented by law or by act of the creditor from*

and then employ it as a defense.[31] The law does not require one to do a vain or useless thing or to perform an unnecessary act to obtain relief to which one is otherwise clearly entitled.[32] In sum, whenever by contract or statute performance is required by a certain date and one who is to render it is prevented from so doing by an act of one to whom performance is due, the time to perform is postponed by force of law until its execution becomes possible.

 These legal principles are apposite here. The Board's policy of obedience to the Attorney General's legal advice[33] deprived all those who retired after that opinion's adoption as the agency rule[34] of an effective or available administrative remedy to secure military service credit for retirement benefits. Any application to the Board for military service credit would have been a vain act—doomed to defeat by the agency rule. URSJJ retirees adversely affected by the Board's actions were effectively deterred from applying because to do so would have been indeed an exercise in

futility. Until the Attorney's General opinion was judicially declared invalid, *no effective administrative remedy* was available to these retirees. In this legal posture, it was unnecessary for the class members to seek the Board's formal denial as a prerequisite for seeking relief from the trial court. Compliance with OPERS application procedures was not incorrectly postponed until some reasonable time following the district court's declaration of the statute's efficacy. The Board was properly ordered to recalculate military service credit for those eligible URSJJ members whose receipt of added benefits was blocked by the agency's adoption of the Attorney General's November 16, 1981 opinion.[35]

### III

### ATTORNEY'S FEES

 Lastly, the claimant requests that the Board be ordered to pay attorney's fees which he incurred in the prosecution of this

---

*paying the debt.* See also, *Blankenship v. Rowntree,* 238 F.2d 500, 504 [10th Cir.1956] (interest was suspended on appeal because of improper acts of the recovering party); *Travelers Fire Ins. Co. v. Ranney–Davis Mercantile Co.,* 173 F.2d 844, 851 [10th Cir.1949] (interest is suspended for payment of debt prevented by law or creditor's act) and *United Petroleum Exploration v. Premier Resources,* 511 F.Supp. 127, 132 [W.D. Okl.1980] (refusal to accept payment suspends interest).

**31.** See *Hart v. Bridges,* Okl., 591 P.2d 1172, 1174 [1979].

**32.** This equity principle is well established in our jurisprudence. See *Wagoner County Election Board v. Plunkett,* Okl., 305 P.2d 525, 531 [1956] and *Parker v. McCauley,* Okl., 393 P.2d 527, 529 [1964] and *Farris v. Cannon,* Okl., 649 P.2d 529, 531, note 4 [1982]. In *Farris, supra,* we reiterated the rule that the legislature is never presumed to have done a vain thing. See also *School Board of City of Charlottesville, Va. v. Allen,* 240 F.2d 59, 63–64 [4th Cir.1956], *cert. denied, School Bd. of Arlington County v. Thompson,* 353 U.S. 911, 77 S.Ct. 667, 1 L.Ed.2d 664 [1957]; *Cohen v. Public Housing Administration,* 257 F.2d 73, 77 [5th Cir.1958] and *Standard Lumber Co. v. Florida Industrial Co.,* 106 Fla. 884, 141 So. 729, 732 [1932].

**33.** The agency's adherence to the Attorney General's opinion was not unwarranted. The Board

faced a peril of liability if it paid out benefits in contravention of the Attorney General's opinion and a court declared later that § 67.13a was invalid. The Board had no viable alternative. It was compelled to act in accordance with the Attorney General's prescribed norm of legal conduct until a contrary judicial decision was reached. In *State ex rel. York v. Turpen,* Okl., 681 P.2d 763, 767 [1984], this court held that an Attorney General's opinion which states that a legislative act is unconstitutional should be considered *advisory only* and not binding on state officials until so determined by a district court. Prior to *York,* our jurisprudence viewed an Attorney General's opinion as *binding upon the state* official affected by it. See *Rasure v. Sparks,* Okl., 75 Okl. 181, 183 P. 495, 498 [1919] and *Pan American Petro. Corp. v. Board of Tax-Roll Cor.,* Okl., 510 P.2d 680, 681 [1973]. Whether the legal advice of the Attorney General be considered binding or merely advisory, a state agency is deemed protected from liability when it heeds the advice given by the chief law officer of the state. See 74 O.S. 1981 §§ 18 and 18b(e).

**34.** See *supra* note 27.

**35.** See *supra* note 27.

appeal. The government is statutorily immune from damages incurred in the exercise of its adjudicative capacity.[36] The function's classification depends on the act involved.[37] Because of the State's immunity the claimant is not entitled to have appeal-related attorney's fees assessed in his favor.

■ Attorney's fees may not be awarded unless the recovery is authorized by statute or bargained for in a contract.[38] The claimant cites 20 O.S. 1981 § 15.1 for the required statutory authority; this section does not abrogate the Board's exemption from civil liability. We hold that, absent an explicit statutory exception, immunity from damages for governmental activities is a bar to recovery of attorney's fees in any suit against an agency for relief from an exercise of its adjudicative function.

The trial court's judgment is affirmed.[39]

HARGRAVE, V.C.J., and LAVENDER, SIMMS and SUMMERS, JJ., concur.

HODGES, J., dissents.

DOOLIN, C.J., disqualified.

KAUGER, J., recused.

---

**36.** The Governmental Tort Claims Act, 51 O.S. Supp.1984 § 155(2), provides in pertinent part: "The state ... shall not be liable if a loss or claim results from: * * * 2) Judicial, quasi-judicial, or prosecutorial functions; ...."

**37.** See *McCracken v. City of Lawton*, Okl., 648 P.2d 18, 20 [1982].

**38.** *Moses v. Hoebel*, Okl., 646 P.2d 601, 603 [1982] and *McCracken v. City of Lawton, supra* note 37 at 20.
 After judgment was rendered in this case the legislature enacted 12 O.S.Supp.1987 § 941(A)

which adopted a different approach to the state's liability for counsel fees in suits *brought by the state* "without reasonable basis" or for frivolous reasons. The provisions of this section cannot be applied to this action because it had not been originally brought by the state.

**39.** A legally correct judgment that was given for the wrong reasons must nonetheless be affirmed. *Utica Nat. Bank & Trust v. Assoc. Prod.*, Okl., 622 P.2d 1061, 1066 [1981].